FILED
Mar 26, 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 26, 2019

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 17-12281-HH
Case Style: George Amador v. Jones Lang LaSalle Americas
District Court Docket No: 0:15-cv-62278-KMW

Enclosed is the Bill of Costs.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 17-12281

_____

District Court Docket No.
0:15-cv-62278-KMW

GEORGE AMADOR,

                                             Plaintiff - Appellant,

versus

JONES LANG LASALLE AMERICAS, INC.,
a Maryland corporation,

                                             Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: February 25, 2019
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

**ISSUED AS MANDATE 03/26/2019**

Plaintiff-Appellant George Amador appeals from the jury's verdict in favor of Defendant-Appellee Jones Lang LaSalle Americas, Inc. ("JLL"). Amador's appeal challenges several evidentiary rulings, primarily the district court's exclusion of the substance of JLL's response to Amador's charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC" or "the Commission"). Because we find that the district court did not abuse its discretion, we affirm.

## BACKGROUND

JLL is a commercial real estate management company for which Amador worked for roughly twenty years. From 2012 to early 2014, Amador served as Global Energy and Sustainability Director for JLL's account with HSBC. In April 2014, the JLL employee responsible for its Citibank account in Latin America resigned abruptly. William Thummel, JLL's Global Relationship Manager for the HSBC account, asked Amador to cover the Citibank account through a transition while maintaining his HSBC duties. Thummel felt Amador was a good candidate to lead the transition because of his ties to the client. Amador agreed and performed job tasks for both accounts.

In June 2014, however, Thummel determined, based on conversations with the client, that the HSBC role could not be effectively completed on a part-time basis and sought to replace Amador so he could fully devote his time to the

2

Citibank transition. Thummel indicated that this change was merely a product of circumstance, not a fault of Amador's. Patrick Kidd, JLL's Global Operations Director on the HSBC account at the time, hired JLL employee Chandra Gopalaskrishnan to take over Amador's HSBC role. Amador confirmed that he was informed of this decision—and that he would continue to lead the Citibank transition as his sole focus—in July 2014, but at no time did he contest the decision or petition to keep his job on the HSBC account.

In the meantime, Amador continued to work on the Citibank account through approximately the end of September 2014. At that time, the transition of the Citibank account had completed and JLL notified Amador that he had until the end of the year to find employment within the company or face termination. Thummel was confident that Amador would find another role within JLL as it was quite common for JLL employees to frequently change roles and Amador was well-regarded within the company. Amador applied for three positions with JLL— including one he helped to design with the assistance of Michael Friedl, Director of Operations for Latin America—but did not receive offers. Ultimately, because he had not secured another position within JLL, Amador's employment was terminated.

Amador filed a charge of discrimination with the EEOC alleging both race and age discrimination. JLL's in-house counsel, Rachel Barner, prepared a letter

3

in response to Amador's charge ("Position Statement") and filed it with the Commission.

On October 28, 2015, after his charge with the EEOC was dismissed, Amador filed suit pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the age-discrimination provision of the Florida Civil Rights Act, Fla. Stat. § 760.10(1)(a).  The district court later granted partial summary judgment in favor of JLL, leaving JLL's decision to backfill the HSBC role as the sole adverse action in dispute.

At trial, Amador sought to introduce the Position Statement and to call Barner as a witness to testify to the document's contents.  The court prohibited Amador from doing either.  In making its ruling, the district court expressed a concern that the Position Statement included issues immaterial to Amador's remaining claims, including an allegation of race discrimination and discussion of JLL's decision not to offer Amador the full-time Citibank position, a basis of discrimination previously dismissed by the court.  Instead, the court permitted Amador to use the document in his cross-examination of two JLL corporate representatives—Thummel and Joe Stolarski, Executive Managing Director for the Americas region—and potentially impeach them on their knowledge of certain areas of inquiry found within the Position Statement.

Ultimately, the jury returned a verdict in favor of JLL and Amador timely filed this appeal.

## **DISCUSSION**

On appeal, Amador argues that the district court committed reversible error when it excluded the substance of the Position Statement.[1] We review the admissibility of evidence for abuse of discretion. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). "The district court's evidentiary rulings will be affirmed 'unless the district court has made a clear error of judgment or has applied an incorrect legal standard.'" *Id.* "However, even a clearly erroneous evidentiary ruling will be affirmed if harmless." *Id.* The abuse of discretion standard recognizes that the district court may pursue "a range of options," *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 863 (11th Cir. 2004), and so long as the court's choice does not affect the substantial rights of parties, any error will be no more than harmless, *Furcron*, 843 F.3d at 1304. Because we find that the district court did not abuse its discretion, we affirm.

---

[1] Amador also advances two additional arguments: 1) that the district court erred in permitting evidence of alleged settlement negotiations and 2) the jury should have been instructed on the import of that evidence. As to the first contention, Amador acknowledges that he waived that issue. His argument as to the jury instructions, on the other hand, fails to articulate *any* basis upon which we could conclude that the court's instructions failed to properly guide the jury in its deliberations. *See Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998). As a result, neither issue has been properly presented to this panel and so we decline to consider either.

5

Amador contends that the Position Statement contradicts trial testimony as to JLL's stated rationale for terminating Amador. As a result, Amador maintains that he should have been permitted to introduce the Position Statement into evidence. Amador submits that such evidence would have provided the jury a sufficient basis to infer that JLL's proffered reason for Amador's termination was pretext. However, we are not convinced that the kind of inconsistencies that would tend to establish pretext are contained within the Position Statement. Accordingly, the district court acted well within its discretion in excluding the document and refusing Barner's testimony.

In assessing an ADEA claim that relies on circumstantial evidence, we typically employ the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once the ultimate question of intentional discrimination is submitted to a jury, however, that familiar rubric falls away. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993). At that point, the jury is charged with determining whether the employer discriminated, in light of both the employer's proffered legitimate, non-discriminatory reason for the employment action and the employee's assertion that that reason is pretext. *Id.*

In order to establish pretext, a plaintiff may prevail "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is

6

unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Under the latter approach, inconsistencies in an employer's rationale for the adverse action may serve as evidence of pretext. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998). In such circumstances, "the plaintiff's initial evidence, combined with effective cross-examination of the defendant, [may] suffice to discredit the defendant's explanation." *Burdine*, 450 U.S. at 255 n.10. Regardless, the "ultimate burden of persuading the trier of fact . . . remains at all times with the plaintiff." *Id.* at 253.

Simply put, the Position Statement does not contain material inconsistencies such that its exclusion constituted an abuse of discretion. When alleging inconsistencies in an employer's rationale for an adverse employment action, a plaintiff must not rely on conclusory statements but rather must challenge each of the employer's proffered reasons directly. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). And such "inconsistencies" will only hold evidentiary weight if they are indeed inconsistent. *See, e.g.*, *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1317 (11th Cir. 1998) (finding that the plaintiff failed to raise sufficient incoherencies to satisfy its "pretext burden"). Each of the "inconsistencies" Amador cites are either immaterial to his pretext argument or not as incompatible with the trial evidence as he suggests. Accordingly, his argument

7

that the district court abused its discretion in excluding from evidence the substance of the Position Statement is unavailing.

For one, Amador's insistence that the Position Statement contradicts testimony about the Citibank role is belied by the record. Crucial to the pretext argument, Amador contends, are the Position Statement's representations about what Amador was told when he accepted the Citibank role. First, Amador claims that the Position Statement contradicts testimony at trial in that it states that JLL informed Amador of the risk that his HSBC position would need to be backfilled. However, the document simply states that "[g]iven the uncertain duration of this assignment, Thummel advised Amador that JLL would need to backfill his position with HSBC." Untethered from a moment in time at which this statement was made, this is not inconsistent with Thummel's testimony that he did at some point come to the realization that the HSBC role would need to be backfilled. Second, Amador quibbles with the Position Statement's comment that "Amador accepted the temporary assignment to [Citibank] even though there was a risk that no appropriate role at JLL would be available when his assignment ended." Amador argues that this statement stands in contrast to trial testimony regarding what he was told at the time he took on the Citibank transition. Yet, the Position Statement is not as disparate as Amador suggests. Due to his extensive history with JLL, Amador would have been aware that assignments changed frequently,

8

thus suggesting that he knew any change in roles would carry such risks. As the Position Statement is agnostic as to *how* Amador became aware of this "risk," Amador has failed to identify a contradiction that would tend to show pretext. As a result, Amador's argument on these two points fails to persuade.

Amador next argues that his considerable financial and familial obligations make incredible the Position Statement's representation that he accepted the Citibank role even though "there was no guarantee" another position at JLL would be available upon the conclusion of this temporary assignment. In order for inconsistent statements to establish pretext they must be *internally* inconsistent— that is, Amador must identify "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the *employer's* proffered legitimate reasons for its action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (emphasis added). To raise a potential inference of pretext, Amador would have to identify inconsistencies between JLL's statements on this matter. While the Position Statement does state that the Citibank assignment "provided Amador an opportunity, albeit short-term, to assume a client-facing role . . . [that] might better position [him] for future leadership positions," the document does not indicate *why* Amador accepted the position. In this regard, circumstances wholly outside the testimony given at trial by JLL's representatives cannot undercut the Position Statement. Because the Position Statement does not take a stance on Amador's

9

motivation for changing roles, this alleged contradiction is not materially inconsistent.

Last, Amador argues that inconsistencies arose over the reasons Stolarski decided not to extend a post-termination job offer. Whereas the Position Statement offered purely economic reasons for Stolarski's rejecting Amador's candidacy, Friedl testified that Amador did not receive a job offer because of his "management style." This argument clearly does not tend to establish pretext as to Amador's termination from the HSBC role, the sole issue presented to the jury. Consequently, this alleged inconsistency is irrelevant to Amador's pretext argument here.

We note that Amador does raise one potentially relevant inconsistency between the Position Statement and the evidence adduced at trial: the Position Statement credited Thummel with informing Amador that his HSBC position would be backfilled, when a different JLL employee, Mark Melas, was said to have had this conversation. A seemingly clerical error such as this—or possibly an error made in gathering information for the Position Statement—does not suffice to raise a claim that there was an abuse of discretion. Moreover, there is no reason to believe that the identity of this individual would sway a jury in its deliberations. Accordingly, this discrepancy is of little import to our analysis—and to Amador's claim.

To be sure, the district court pursued an entirely reasonable course of action in excluding the Position Statement while allowing the document to be used for impeachment purposes. Methods such as this, deployed during cross-examination, have been sanctioned by the Supreme Court and recognized as sufficient for establishing pretext. *See Burdine*, 450 U.S. at 255 n.10. Amador attempts to liken his case to *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) (en banc), but—as in that case—even were we to find error in excluding the Position Statement, Amador's argument would still fail. *See id.* at 1038. To prevail, Amador would need to show not only that JLL's stated reason for termination was pretext but also that intentional age discrimination was the true reason. *Hicks*, 509 U.S. at 515. The Position Statement does not contain *any* indicia of actual discrimination. Had the district court introduced the entirety of the document into evidence, Amador would have been in the same position he was at trial, during which he failed to prove the ultimate question of discrimination. Accordingly, any arguable error in the Position Statement's exclusion was harmless.

At the end of the day, the district court had several options when considering the admissibility of the Position Statement. We will not disturb such a discretionary choice where there is no showing that the district court's preferred route reflected an abuse of discretion. As a result, Amador's appeal is denied.

**AFFIRMED**.

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## Bill of Costs
### (Seq of 3)

Court of Appeals Docket No. __17-12281-X__

George Amador _____ vs. Jones Lang LaSalle Americas, Inc. _____

A Bill of Costs should only be filed when the Clerk's Office has advised a party that the party is entitled to costs. FRAP 39 and 11th Cir. R. 39-1 govern costs taxable in this court and the time for filing the Bill of Costs. A motion for leave to file out of time is required for a Bill of Costs not timely received.

## INSTRUCTIONS

The appellate docketing fee is set in the fee schedule issued pursuant to 28 U.S.C. § 1913. However, the $5 fee for filing a notice of appeal is recoverable as a cost in the district court. In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced. Multiply this number by the cost per copy ( $.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

|  | Repro. Method (Mark One) In-House | Repro. Method (Mark One) Comm* | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
| Appellate Docketing Fee | — | — | — | — | — |  |  |
| Appellant's Brief |  |  |  |  |  |  |  |
| Appendix |  |  |  |  |  |  |  |
| Appellee's Brief | X |  | 57 | 7 | 399 | $59.85 | 59.85 |
| Reply Brief |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| *Note: If reproduction was done commercially, receipt(s) must be attached. |  |  |  | TOTAL | 399 | $$59.85 REQUESTED | $ ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred in this appeal and that I have served this Bill of Costs on counsel/parties of record.

Signature: _Sadina Montani_ (signed)
Attorney Name: __Sadina Montani__
(Type or print your name)
E-mail: __smontani@vedderprice.com__
Street Address/City/State/Zip: __Vedder Price P.C., c/o Sadina Montani; 1401 I Street NW, Suite 1100, Washington, DC 20005__

Date Signed: __3/11/2019__
Attorney for: __Jones Lang LaSalle Americas, Inc.__
(Type or print name of client)
Phone: __(202) 312-3349__

### FOR COURT USE ONLY

Costs are hereby taxed in the amount of $ __$59.85__ against __Appellant__
and are payable directly to __Appellee__

David J. Smith, Clerk of Court
By: _Tina Porter_ (signed)   DATE: __3/12/2019__
Deputy Clerk

Issued on: _____

BOC Rev.: 6/17

**ISSUED AS MANDATE 03/26/2019**